UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LESTER PEARSON                                              CIVIL ACTION

VERSUS                                                      NO. 06-3845

SHERIFF RODNEY STRAIN ET AL.                               SECTION "J" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Lester Pearson, is a prisoner currently incarcerated in the St. Tammany Parish jail in Covington, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the St. Tammany Parish Police Jury, Sheriff Rodney Strain, Warden Marlin Peachy, Deputy Young, Coy Canulette, Tommy Noto and Louisiana State Trooper S. Paulus. Pearson alleges that he was subjected to excessive force and unconstitutional conditions of confinement at the jail and was denied legal assistance and a hearing to determine probable cause for his arrest. He seeks his release, compensation and "remedial measures." Record Doc. No. 1 (Attachment to Complaint).

On September 19, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Bradley Lewis, Leo Hemelt, Phyllis Glazer and Michael Keller, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

Pearson filed motions seeking class certification, which included a motion to appoint class counsel, Record Doc. Nos. 25, 72 and 73; a Request for Preliminary Injunction, "preventing my continue[d] pretrial detention and to release me without bond obligations;"  Record Doc. No. 41, and an "amended" motion for summary judgment, Record Doc. No. In addition, defendant, St. Tammany Parish Police Jury, has filed a motion to dismiss.  Record Doc. No. 48.  This report contains a recommendation for disposition of defendant's motion to dismiss and plaintiff's motions for class certification, appointment of class counsel, injunctive relief and summary judgment, all pursuant to 28 U.S.C. § 636(b)(1)(B).

## **THE RECORD**

In his written submissions, plaintiff stated that he was arrested on August 1, 2005 "without a warrant and charged [with] possession with intent to distribute marijuana and several counts of simple battery on a police officer to which no probable cause determination has been held within 48 hours of my arrest nor have I been released without bond obligations."  Record Doc. No. 1 (Attachment to Complaint, at p.8).

Pearson further asserts that "[o]n August 27, 2005 Hurricane Katrina was headed for St. Tammany Parish[,] an evacuation order was put into effect [and] jail officials evacuated all prisoners on D-unit and many trustees but left all prisoners in the medical dorm, C-Unit."  Id.

2

Plaintiff further wrote that he and other inmates "were held for numerous days without drinking water or sufficient food causing thirst and hunger pains while the employees, their families and friends were properly fed and had access to water when they wanted." Id.

Pearson alleges that defendant Young caused his arrest without a warrant on May 25, 2006 "for aggravated 2nd degree battery and battery on a correction officer to which no probable cause determination has been held nor have I been released without bond obligation." Id. at p.10.

Plaintiff further alleges that "there is no law library or persons trained in the law to assist prisoners in filing petitions attacking their unconstitutional conviction/conditions of confinement." Id. at p.11.

In his amended complaint, Record Doc. No. 20, Pearson asserts that defendant Noto "use[d] excessive and unnecessary force during my arrest by repeatedly kicking me in my groin, head, ribs, arms and legs to which I was deprive[d] of medical attention."

During the September 19th conference, plaintiff testified that he is currently incarcerated as a pretrial detainee awaiting trial on various charges. He stated that he was initially arrested on August 1, 2005 and charged with possession of marijuana with intent to distribute and simple battery of a police officer. He testified that he was charged with aggravated battery of a corrections officer on May 15, 2006. He testified that no trial

date on any of these charges has yet been scheduled, but he is represented by retained counsel in the criminal proceedings and he has been to court.

He confirmed that he makes four kinds of claims in this case: (1) He was subjected to unsanitary conditions in the jail during and after Hurricane Katrina. (2) He was not given a probable cause hearing after either his August 2005 or his May 2006 arrests. (3) The jail has no adequate law library or legal assistance to help him with the claims pending in this court or with his criminal proceedings in state court. (4) Defendant Noto used excessive force against him during the August 2005 arrest.

As to his claim concerning unsanitary conditions at the jail, Pearson detailed his complaints in writing as follows:

> All toilets were overrun with feces and urine which we were required to breathe due to no ventilation . . . nor would they open the back door for fresh air or take us outside in the secured exercise yard.
> They cut all telephones off to prevent any outside communications to get help.
> . . . [T]he trustees and employees toilets were flushed daily with buckets of water yet our[s] sat overran including feces in bags.
> . . . [FEMA] and other organizations provided the jail with food and water for all the prisoners yet these items did not reach us in their entirety but went to the employees, their families/friends trustees.
> . . . [A]s a pre-trial detainee I should have been transferred from these unconstitutional conditions of confinement ahead of any convicted prisoner yet the majority of convicts were transferred over pre-trial detainees.
> . . . [W]e had to eat while smelling strong odors of feces and urine for days despite pleas to open doors for fresh air.

4

> . . . I started to choke on some food due to not being provided anything to drink to wash the food down.
> . . . I became sick at my stomach from smelling feces and urine.
> . . . [C]ases of bottled water sat in the sally port for officers and whoever wanted it while we went thirsty locked up.

Record Doc. No. 1, Complaint at pp. 9-10.

In his testimony, Pearson stated that these conditions began during Hurricane Katrina and lasted for about a week.  He testified that, in addition to the unsanitary conditions that occurred as a result of the hurricane's passage, he had been exposed to improper conditions after he was first arrested when he had been kept in a holding tank at the jail for about seven days. He said that he had to sleep on the floor of the holding tank, that it was overcrowded and that he had no "proper showers" for seven days. Plaintiff  testified that there were about 30  inmates in the holding tank, but he could not estimate the size of the holding tank.  He said that about 17 people in the holding tank were sleeping on the floor, while the other inmates were sitting on some sort of concrete block attached to the wall.  He stated that the tank contained no furniture but did have one sink and one toilet.

Pearson testified that he was taken to "a housing area" in the jail after he left the holding tank.  He stated that the bad conditions caused by the hurricane lasted for seven to ten days.  He testified that there was no water available to the prisoners for about five of those days.  He said the inmates were locked in their cells, where the toilets did not

5

flush and overflowed.  Pearson said that the toilets were able to flush when water was

brought in to flush them.  He said that, on the seventh day after the hurricane, prison

officials provided the inmates with Kool-Aid to drink.  He testified that the inmates had

to eat in their cells during the first several days, with the smell of urine and feces from

the toilets that would not flush, until on the sixth or seventh day the inmates were

allowed out of their cells into a day room.  He said the food they received during the first

several days consisted only of peanut butter and jelly sandwiches on white bread.

Pearson testified that "we were given food every day, but the food we were given

was not sufficient.  They would give us . . . one peanut butter and jelly sandwich."  He

said that, after he was let out of his cell on the fifth or sixth day and taken to the day

room, prison officials began moving him and the other inmates to another part of the jail

where there was a dorm.  He complained that there was no ventilation in the dorm and

that prison officials advised the inmates not to drink the water from the sinks, and jailers

were bringing them Kool-Aid.  Plaintiff stated that, although there was bottled water at

the jail that had been provided by hurricane relief agencies, the bottled water was not

being used for the inmates, but for the guards and members of the deputies' families who

had come to the jail for shelter from the hurricane and its aftermath.

Pearson testified that most of the convicted inmates and the female inmates had

been shipped away from the jail in response to the hurricane, but about 200 pretrial

6

detainees, including himself, remained at the jail.  He said the food and water that was being received from relief agencies at the jail was being used for the guards and their families but was not "making it to the back" for use by the prisoners.  He complained that, as family members of the inmates called the jail to check on the inmates, they were falsely told that the inmates had been shipped out, and that the prisoners were unable to make telephone calls or send or receive mail in the aftermath of the storm.

Pearson said he had no idea whether the telephone and mail conditions about which he complained in the jail were the same kinds of conditions that people outside the jail were experiencing as a result of the hurricane, but he said that, if that were the case, he should have been shipped somewhere else.

As to his claim that he did not receive probable cause hearings after his arrests in August 2005 and May 2006,  Pearson testified that a judge is supposed to find probable cause for an arrest within 48 hours, or the inmate is to be released under Louisiana Code of Criminal Procedure article 230.  He stated that he has made this argument through his counsel in his state court criminal proceedings and that the motion has been pending since June.  He testified that he has appealed that issue to the state court of appeal in Baton Rouge, which has not yet ruled, and that he has not yet raised the issue in the Louisiana Supreme Court.

As to his claim concerning insufficient legal assistance at the jail, Pearson testified that "there's no kind of proper, running law library, there's no one trained in the law to assist us, and since I filed my claim they're making it even harder to get what we need from the little law library that we have." He said he needs a law library because he does not have an attorney to help him with this civil case in this court and his pending criminal proceedings in state court. He stated that, even though he is represented by counsel in his criminal proceedings, "I would still like to educate myself with the law."

As to his claim that Deputy Noto used excessive and unnecessary force in connection with his arrest, Pearson confirmed that the alleged force was used in connection with his August 1, 2005 arrest. He testified that Noto repeatedly kicked his head, body, torso and legs during that arrest. Plaintiff said that the beating occurred at Louisiana State Police Troop L headquarters on August 1, 2005 while Pearson was being questioned after the arrest. He said that defendants Noto, Paulus and Canulette all participated in the use of excessive force.

Pearson stated that the beating lasted for about five minutes. He testified that the Troop L headquarters is located in St. Tammany Parish. He said he was charged with battery of a police officer after he was beaten up in the interrogation room at Troop L headquarters. He denied that he resisted arrest. Plaintiff stated that he "struck the officers to defend myself." He confirmed that he had not yet gone to trial on that charge.

He stated that he was arrested on the marijuana charge on Interstate 12 in St. Tammany Parish and was taken to Troop L headquarters within about 15 minutes after the arrest.

Asked what injuries he suffered in the beating, Pearson testified that he had bruised ribs, a knot on his forehead, a "busted" lip, excruciating pain in his groin area and injuries to his arms from trying to block the blows.  He said that, from Troop L headquarters, he was taken immediately to the St. Tammany Parish jail, where he was "almost tazed and maced and . . . thrown in the holding tank."  He stated that he was no longer suffering from his injuries.  He said that his groin hurt for four or five months, the bruises went away sometime in October 2005 and the knot on his forehead and cuts on his lip went away within a week.  He confirmed that he suffered no broken bones or other lacerations in the beating, except for bruises on his knee and elbow that cleared up within a few weeks.

Pearson reiterated that no trial date has been set on his state court criminal charges, but stated that he had gone to court in connection with the charges about three weeks ago.  He testified that the judge was supposed to rule on his motion concerning the probable cause hearing, but he had not yet received the ruling.

On cross-examination, Pearson testified that he had filed a previous lawsuit concerning an assault by corrections officers in New York in 2002 or 2003.  He stated that he had been brought to a 72-hour hearing concerning the August 1, 2005 arrest on

9

that same day, but he alleged that no probable cause determination was made and that a commissioner presided at that hearing.  He complained that he did not receive any such hearing in connection with the May 2006 charge.  He denied that Deputy Young had been burned while arresting plaintiff.

## ANALYSIS

### I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim under Section 1983 of violation of his constitutional rights under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

II.   <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff asserts that he was subjected to unsanitary conditions in the jail during and after Hurricane Katrina.  In addition, he alleges that he was exposed to improper conditions after he was first arrested because he was kept in a holding tank for about seven days where he had to sleep on the floor, the tank was overcrowded and he had no "proper showers" for seven days.

Pearson was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999); <u>Hamilton v. Lyons</u>, 74 F.3d 99, 104 n.3 (5th Cir. 1996);  <u>Hare v. City of Corinth</u>, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Id.</u>

There is nothing in plaintiff's written submissions or <u>Spears</u> testimony from which it might be inferred that the conditions he described were the result of a prison official's

13

act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997)), and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.

As to these particular claims, Pearson's allegations do not allege violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

14

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  <u>Farmer</u>, 511 U.S. at 847.  A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other citations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions in the jail relate to prison officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed."  <u>Hamilton</u>, 74 F.3d at 104

15

n.3.  Thus, Pearson must allege facts sufficient to establish that any defendant <u>knew</u> that plaintiff faced a <u>substantial</u> <u>risk</u> of <u>serious</u> harm and <u>disregarded that risk</u> by failing to take reasonable measures to abate it.  Plaintiff fails to allege any such facts when he complains about temporary conditions, including seven days in a crowded holding tank without a mattress and "proper" showers.  Although the conditions he described may have been unpleasant, Pearson has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of <u>Farmer</u>, and this claim does not rise to the level of a constitutional violation.

For example, Pearson's complaint that the holding tank was overcrowded and that he had to sleep on the floor for seven days fails to state a constitutional violation.  The conditions described by plaintiff, while plainly not comfortable or pleasant, are within constitutionally acceptable norms and do not rise to a level of unconstitutional overcrowding.  <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 849 (5th Cir. 1989).  The temporary crowded condition that Pearson experienced for only a short time did not result in "sufficiently serious" conditions posing "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834.

It also cannot be said that Pearson "face[d] a substantial risk of serious harm" in the constitutional sense from the temporary lack of a mattress for seven days.  Although

16

the Fifth Circuit has not yet addressed this question, the Sixth Circuit at least once and the Eighth Circuit repeatedly has held in recent years that deprivation of bedding for a limited period of time is not per se unconstitutional.  See Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).  Provision of bedding falls within those matters committed to prison administrators' sound discretion.  Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. November. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion. Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights"); Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); Anela v. Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); Lareau v. Manson, 651 F.2d 96, 105 (2d Cir. 1981) ("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); Martino v. Carey, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights"); Vazquez v. Gray, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional"));

18

Oladipupo v. Austin, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("Oladipupo II") (citing the same cases).

First, none of the cases cited by Chief Judge Little presents a factual situation akin to Pearson's.  Second, those cases applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials.  Thus, I find the Eighth Circuit's reasoning and holdings in its recent cases more persuasive in the instant case than the Oladipupo decisions and cases cited therein.

Pearson alleges no risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions, from being deprived of a mattress for seven days.

Furthermore, a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)).  None of Pearson's allegations about the conditions at the jail establish constitutional violations.  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150,

156 (5th Cir. 1982).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Pearson's complaint that his constitutional rights were violated by the temporary conditions wrought by Hurricane Katrina are wholly without merit.  Hurricane Katrina was a disaster on a scale that Southeast Louisiana, including St. Tammany Parish, have rarely, if ever, experienced.  The resultant flooding and wind damage, which led to the conditions about which plaintiff complains, were caused by catastrophic natural forces. Plaintiff simply cannot show that defendants were aware of facts from which they inferred that the hurricane posed a substantial risk of serious harm to inmates remaining in the jail and that they intentionally chose to disregard that risk.

Plaintiff's specific claim in this regard (as differentiated from his distinct excessive force claim) is also deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages.  Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury."  (Emphasis added).  The only "injuries"

alleged by Pearson in this case are thirst, hunger pains and brief nausea from the smell of feces and urine.

In several recent decisions, the Fifth Circuit has enforced the statutory physical injury requirement for prisoners who seek damages for intangible emotional or psychological harm, such as has been alleged by Pearson in this case.  Harrison v. Smith, No. 03-40924, 2003 WL 22946387, at *1 (5th Cir. Dec. 11, 2003); Criollo v. Wilson, No. 02-21124, 2003 WL 22295491, at *1 (5th Cir. Oct. 7, 2003); Atkinson v. Johnson, 2003 WL 22012901, at *1 (5th Cir. Aug. 26, 2003); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'"  Alexander, 351 F.3d at 630 (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)).  Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they had suffered were nausea and one incident of vomiting.  Id.  Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, no physical injuries of any kind have been alleged by Pearson as a result of his confinement for a brief period of days following and due to Hurricane Katrina.

As Section 1997e(e) provides and Fifth Circuit case law makes clear, Pearson is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.  Thus, his complaint must be dismissed in this regard.

III.   <u>ACCESS TO A LAW LIBRARY</u>

Plaintiff alleges that he was denied access to a "proper, running law library" or other legal assistance.  Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Pembroke v. Wood County</u>, 981 F.2d 225, 229 (5th Cir. 1993).  However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has <u>not</u> extended this right to encompass more than <u>the ability of an inmate to prepare and transmit a necessary legal document to a court</u>."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996) (quotation omitted) (emphasis added).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Pearson must demonstrate that his position as a litigant was actually prejudiced.  <u>Lewis v. Casey</u>, 518 U.S. 343, 356 (1996); <u>Eason</u>, 73 F.3d at 1328; <u>Walker</u>

v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993) (citing Henthorn v. Swinson, 955 F.2d 351, 354 (5th Cir. 1992)).   The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  Lewis, 518 U.S. at 351.

Pearson wholly fails to establish the foregoing essential elements of his First Amendment claim in either his complaint or his testimony in all of three distinct ways. First, Pearson testified that he needed access to a law library or other legal assistance at the prison because he does not have an attorney to help him with this civil case in this court, and that he wishes to be educated in the law even though he is represented by counsel in his pending criminal proceedings in state court.  Pearson acknowledged that he was represented by an attorney in his criminal case.

Under these circumstances, plaintiff's right of access to the courts, as guaranteed by the Constitution and interpreted by Bounds, was clearly satisfied by his representation by counsel in his criminal proceedings.  Schrier v. Halford, 60 F.3d 1309, 1313-14 (8th Cir. 1995); Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986); Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir. 1985).

As to the instant civil action, it is clear that plaintiff has submitted materials sufficient to prosecute his civil case in this court.  In fact, his written submissions have been numerous and prolix.  His case has proceeded through a Spears hearing and is now

23

being considered on its merits. Therefore, it must be concluded that his First Amendment right, which encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court,  Eason, 73 F.3d at 1328, was not violated.

Third, it is clear that no actual legal prejudice to Pearson's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997).  In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the Lewis case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Id., 518 U.S. at 356 (emphasis added).  For all of the reasons set out in this report, Pearson's claims are legally frivolous or otherwise barred by Supreme Court precedent.

As noted above, a prisoner's First Amendment right of access to the courts encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court.  Pearson conceded in his testimony that he was represented by

24

counsel in his criminal proceedings and that the jail has a "little law library."  It is also clear that he has been able to file all necessary pleadings in the instant civil case.

    For all of the forgoing reasons, Pearson's claim concerning inadequate access to a law library at the jail is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

IV.   *HECK* AND HABEAS

    A.    *Heck* Application to Section 1983 Claim of Untimely Court Appearance

    To whatever extent, if any, Pearson seeks either injunctive relief or damages on grounds that he was not taken to court in a timely manner in connection with the state court criminal charges against him, his Section 1983 claim must be dismissed at this time.  In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state

25

> prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (emphasis in original) (footnote omitted).  Although the Supreme Court's decision in Heck concerned a civil action for monetary damages, the Fifth Circuit has also applied Heck when the plaintiff seeks injunctive relief.  Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (citing Edwards v. Balisok, 520 U.S. 641 (1997)).

Plaintiff's claims are clearly connected to the validity of his present confinement. Heck, 512 U.S. at 479; Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1997); Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir. 1994).  Pearson testified that the charges against him remain pending in the St. Tammany Parish state court and have not yet been set for trial. The charges have not been set aside in any of the ways described in Heck.  Thus, any claims for relief that plaintiff asserts, attacking his continued confinement, are premature and must be dismissed.  As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the Heck conditions are met.  Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

B.   <u>Habeas Corpus Claims</u>

As noted above, Pearson's complaint in part challenges the very fact and duration of his confinement in connection with the pending charges against him.  Although his suit is styled as a civil rights action under 42 U.S.C. § 1983 and filed on a form normally reserved for Section 1983 complaints, he clearly challenges the validity of his confinement and seeks his release.  This Section 1983 complaint is not the proper action in which to assert these habeas corpus claims.

A prisoner who challenges the very fact or duration of his physical confinement and who seeks judgment that would entitle him to release must pursue habeas corpus relief rather than civil rights relief under Section 1983.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Clarke v. Stalder</u>, 121 F.3d 222, 226 (5th Cir.), <u>reh'g en banc granted & opin. vacated</u>, 133 F.3d 940 (5th Cir. 1997), <u>rev'd in part on other grounds & opin. reinstated in relevant part</u>, 154 F.3d 186, 187 (5th Cir. 1998) (en banc); <u>Caldwell v. Line</u>, 679 F.2d 494, 496 (5th Cir. 1982).  Thus, although Pearson filed his complaint on a form reserved for Section 1983 complaints, his claims invoke habeas corpus type relief because he challenges the fact of his confinement.  <u>Clarke</u>, 121 F.3d at 226; <u>Hernandez v. Spencer</u>, 780 F.2d 504, 504 (5th Cir. 1986).

A fundamental prerequisite to federal habeas relief is the exhaustion of all claims in state court before requesting federal collateral relief.  <u>Whitehead v. Johnson</u>, 157 F.3d

384, 387 (5th Cir. 1998) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982)); <u>Nobles</u> <u>v. Johnson</u>, 127 F.3d 409, 419 (5th Cir. 1997). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20)).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the fairly presented' requirement. . . . This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." <u>Id.</u> (citing <u>Picard</u>, 404 U.S. at 275-78; <u>Nobles</u>, 127 F.3d at 420). A court may notice sua sponte the lack of exhaustion. <u>McGee v. Estelle</u>, 722 F.2d 1206, 1214 (5th Cir. 1984).

In the present case, Pearson does not allege and there is no proof that he has exhausted his <u>state court</u> remedies in connection with his claims in this case. On the contrary, on the first page of his complaint, Pearson indicates that he has not begun any other civil lawsuits in state or federal court dealing with the same facts involved in this action. Record Doc. No. 1, Complaint, at p.1, ¶ I(A). Furthermore, Pearson testified, and research by staff of the undersigned magistrate judge with the Louisiana Supreme Court

clerk's office has confirmed, that he has <u>not</u> sought review of the validity of his pretrial detention in the Louisiana Supreme Court.  The charges against him remain pending in the St. Tammany Parish state court and have not been set for trial. Accordingly, plaintiff's claims seeking habeas corpus relief must be dismissed without prejudice to allow him to pursue state court appellate and post-conviction remedies concerning his criminal conviction, before returning to this court with a properly filed habeas corpus petition.

V.    *HECK* BARS PLAINTIFF'S SECTION 1983 CLAIMS OF EXCESSIVE FORCE

Pearson testified that Noto repeatedly kicked his head, body, torso and legs while he was being questioned after he was arrested on August 1, 2005.  He said that defendants Noto, Paulus and Canulette all participated in the use of excessive force.  He stated that he had been charged with battery on a police officer in connection with this incident.

This criminal charge of battery on a police officer currently pending against Pearson arises from the very same incident on which plaintiff bases his civil claims in this case.  Regardless whether Pearson seeks injunctive relief or damages under Section 1983 for use of excessive force during his arrest, his claims must be dismissed at this time under <u>Heck</u>, 512 U.S. at 477.

As set out in the quote noted above, in <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement,

which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

As the United States Court of Appeals for the Fifth Circuit has found in the decision cited below, plaintiff's Section 1983 claim in the instant case necessarily implies the invalidity of his confinement under <u>Heck</u>, and that confinement has <u>not</u> been set aside. Pearson's Section 1983 claim of excessive force in this court must fail because it necessarily impugns the validity of the pending criminal charge against him for battery on a police officer. Because the charge against Pearson still stands and has not been set aside in any of the ways set out in <u>Heck</u>, his excessive force claim is effectively barred by <u>Heck</u>.

In a case presenting a claim similar to the one asserted by Pearson in this case,

[plaintiff] was arrested and convicted of battery of an officer. In Louisiana, self-defense is a justification defense to the crime of battery of an officer. To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. Because self-defense is a justification defense to the crime of battery of an officer, [plaintiff's] claim that [the officers] . . . used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question <u>whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.</u>

Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (citations omitted) (emphasis added).

The instant case is similar.  Pearson is charged with battery on a police officer. His claim that the officers used excessive force would necessarily imply the invalidity of his confinement, and ultimately conviction if he is convicted on that charge, for his own use of force.  Therefore, his claim is barred by Heck.

Plaintiff's claims are clearly connected to the validity of his present confinement. Heck, 512 U.S. at 479; Arnold v. Town of Slaughter, No. 03-30941, 2004 WL 1336637, at *3-4 (5th Cir. June 14, 2004); Hainze, 207 F.3d at 799; Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir. 1994).  However, his confinement has not been set aside in any of the ways described in Heck.  Thus, any claims of excessive force in violation of Section 1983 are premature and must be dismissed, until such time that he is acquitted or, if he is convicted, his criminal conviction is set aside.  As the Fifth Circuit has noted, the dismissal of these claims is with prejudice to their being asserted again until the Heck conditions are met.  Johnson, 101 F.3d at 424.

V.     PENDING MOTIONS

A.     MOTION TO CERTIFY CLASS

Plaintiff has filed motions seeking class certification and appointment of counsel to represent the purported class.  Record Doc. Nos. 25, 72 and 73.

Rule 23 of the Federal Rules of Civil Procedure governs class actions.  The "district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 601 (5th Cir. 2006) (quotation omitted).   "The party seeking certification bears the burden of demonstrating that the rule 23 requirements have been met." Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002) (citation omitted).

> Those requirements are set out in Rules 23(a) and 23(b).
>
> To be certified, the class must first satisfy the following threshold requirements of Rule 23(a):  (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality ("named parties' claims or defenses are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interest of the class").  In addition, the class must satisfy one of the three subsections of Rule 23(b).

Broussard v. Foti, No. 00-2318, 2001 WL 699525, at *1 (E.D. La. June 18, 2001) (Vance, J.) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 623-24 (5th Cir. 1999); Castano v.

American Tobacco Co., 84 F.3d 734 (5th Cir. 1996)); accord Steering Comm., 461 F.3d at 601.

Because Pearson has failed to state any claims for constitutional violations, he also fails to state a claim that other inmates may have generally suffered the same type of injury. He fails to satisfy the requirements of, at a minimum, Rule 23(a)(2) and (3). Tuft v. Chaney, No. H-06-2529, 2006 WL 2247813, at *1 (S.D. Tex. Aug. 4, 2006). Because all of the Rule 23 class-action requirements must be satisfied and plaintiff has failed to satisfy at least two of them, the court need not address the other factors. Steering Comm., 461 F.3d at 601.

Accordingly, plaintiff's motions to certify a class and appoint class counsel should be denied.

B.    MOTION TO DISMISS

Defendant, the St. Tammany Parish Police Jury, has filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. 12(b)(1), (4), (5) and (6). Record Doc. No. 48. If the presiding district judge accepts my recommendations above to dismiss all of plaintiff's claims, defendant's motion should be dismissed as moot.

C.     <u>REQUEST FOR PRELIMINARY INJUNCTION</u>

As mentioned in the introduction to this report, Pearson has filed a motion requesting that the court issue an injunction preventing his continued detention and releasing him without bond.  Record Doc. No. 41.  Plaintiff alleges in his motion that he was arrested without a warrant on August 1, 2005 and on May 25, 2006; that no affidavits of probable cause were prepared by the arresting officers or submitted to a magistrate in either case; and that he never received a 72-hour hearing after the second arrest, all in violation of Louisiana Code of Criminal Procedure articles 230.1 and 230.2 and the United States Constitution.  Pearson states that, because of his incarceration, he has lost money from a recording partnership and from assisting his father in keeping rental property occupied, which is causing a financial hardship on his family to maintain ownership of its property.  Although plaintiff has also filed an Affidavit in Support of Injunction and Summary Judgment, Record Doc. No. 54, nothing in that affidavit is relevant to his motion for preliminary injunction.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held.  A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be

granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood of success on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause defendants <u>and</u> (4) that the injunction will not disserve the public interest.  <u>Sugar Busters LLC v. Brennan</u>, 177 F.3d 258, 264 (5th Cir. 1999).  The requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued."  <u>DSC Commc'n Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts he alleges, Pearson's written submissions and the record to date establish that he is <u>not</u> entitled to a temporary restraining order or preliminary injunction.  Although plaintiff's motion alleges that his statutory and constitutional rights have been violated and that he has lost income as a result of his incarceration, these wholly unsubstantiated allegations are the rankest form of speculation, and plaintiff has not established that any injury he may suffer in the future would be irreparable.  Any cognizable injury that Pearson may suffer as a result of defendants' alleged or anticipated actions may adequately be remedied through the ordinary judicial process without need for a preliminary injunction or temporary restraining order.

It also cannot be concluded that Pearson's complaint presents "a substantial likelihood of success on the merits."  Id.  On the contrary, his complaint fails to state a claim on which relief could be granted.  Although Pearson's allegations must be accepted as true for the initial screening process required for such cases, 28 U.S.C. § 1915A; Martin v. Scott, 156 F.3d 578 (5th Cir. 1998), and I have done so in previous sections of this report and recommendation, no such requirement applies to his request for injunctive relief.  Plaintiff has not clearly alleged at this early stage of the proceedings that a violation of his clearly established constitutional rights has occurred.  Moreover, injunctive relief that would interfere with the administration of prison functions by the court, without justification, would disserve the public interest.

The only relief sought by Pearson is his release without bond because Louisiana Code of Criminal Procedure articles 230.1 and 230.2 provide that remedy for their violation.  He is not entitled to the relief he seeks.

It is well settled that federal habeas relief is not available "to 'abort a state proceeding or to disrupt the orderly functioning of state judicial processes'" by litigating an affirmative or constitutional defense prior to trial, Dickerson v. Louisiana, 816 F.2d 220, 226 (5th Cir. 1987) (quoting Braden v. 30th Judicial Cir. Ct., 410 U.S. 484, 489-92 (1973)) (citing Brown v. Estelle, 530 F.2d 1280, 1283 (5th Cir. 1976)), because "the issues raised in the petition may be resolved either by trial on the merits in the state court

36

or by other state procedures available to the petitioner." Id. at 225 (citing Braden, 410 U.S. at 489-92).  Thus, to the extent that Pearson seeks dismissal of the charges against him, this relief is not an available remedy for a challenge based on violation of the state Code of Criminal Procedure in a federal habeas corpus petition.  His claims seek relief which cannot be granted by this court, and his petition must therefore be dismissed.

Even if Pearson sought appropriate relief, as set out above, he has failed to exhaust state court remedies.  Although there is no reference to an exhaustion requirement in the statutory language of 28 U.S.C. § 2241(c)(3), a federal court should abstain from the exercise of its habeas jurisdiction if the issues raised in a petition may be resolved on the merits in the state court or by some other state procedures available to the petitioner. Dickerson, 816 F.2d at 225; Greer v. St. Tammany Parish Jail, 693 F. Supp. 502, 508 (E.D. La. 1988); see also Braden, 410 U.S. at 489-92.  The exhaustion doctrine is applied to Section 2241(c)(3) as a matter of comity and is based on federalism grounds in order to protect the opportunity of the state courts to confront and resolve initially any constitutional issues arising within their jurisdictions, as well as to limit federal interference in the state adjudicatory process.  Dickerson, 816 F.2d at 225.

Generally, the exhaustion requirement is satisfied only when all grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).  Within the context

37

of a Section 2241 action, this exhaustion requirement is obviated only if "special circumstances" exist.  Dickerson, 816 F.2d at 225 (citing Braden, 410 U.S. at 489); Tooten v. Shevin, 493 F.2d 173, 177 (5th Cir. 1975).

Pearson testified that he has raised these defenses in a motion filed in his state criminal proceedings.  The record in this case reflects that Pearson did not pursue appellate review of the probable cause or detention hearing issues.  My staff has also confirmed with the clerk of the Louisiana Supreme Court that Pearson has not sought relief in that court related to his claims in this case.  There are no circumstances in this case which would allow Pearson to avoid the entire state process by first pursuing federal habeas corpus relief.

Pearson has failed to exhaust state court remedies.  His claims must be dismissed for this reason.  For all of these reasons, plaintiff's motion for a temporary restraining order or other preliminary injunctive relief should be denied.

D.     PLAINTIFF'S "AMENDED" MOTION FOR SUMMARY JUDGMENT

A party who seeks summary judgment in his favor must, among other things, be "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For all of the reasons set forth above, plaintiff is not. His motion for summary judgment, Record Doc. No. 75, must therefore be denied.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), or under Heck.

**IT IS FURTHER RECOMMENDED** that all habeas corpus claims asserted in this Section 1983 complaint be **DISMISSED WITHOUT PREJUDICE** to Pearson's ability to file a proper habeas corpus proceeding after exhaustion of state court remedies.

**IT IS FURTHER RECOMMENDED** that plaintiff's motions to certify a class action, including for appointment of class counsel, Record Doc. Nos. 25, 72 and 73, his request for a preliminary injunction, Record Doc. No. 41, and his "amended" motion for summary judgment, Record Doc. No. 75, be DENIED.

**IT IS FURTHER RECOMMENDED** that the motion of the St. Tammany Parish Police Jury to dismiss, Record Doc. No. 48, be DISMISSED AS MOOT.

39

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __30th__ day of October, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE